USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
UNITED STATES,                            :
                                                  :
            -v-                         :                                          87-CR-132 (VSB)
                                                  :
MARK REITER,                              :                                          **MEMORANDUM & OPINION**
                                                  :
                         Defendant.   :
                                                  :
------------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

      In 1988, Mark Reiter was convicted after a jury trial of racketeering (with predicate acts including three murder conspiracies, three murders, narcotics conspiracy, and the distribution and possession with intent to distribute heroin), racketeering conspiracy, operating a continuing criminal enterprise, distribution of heroin, using a telephone to facilitate heroin distribution, and conspiring to defraud the Internal Revenue Service. Judge Richard Owen, who presided over the trial, sentenced Reiter to two life terms of imprisonment plus sixty years, followed by a life term of special parole, and fines totaling $4 million. Reiter now moves under former Federal Rule of Criminal Procedure 35(a) to correct his allegedly illegal sentence on the basis that neither the jury nor the judge made particularized findings that his heroin distribution involved more than 100 grams, and therefore his life sentence was illegal. For the reasons that follow, the motion is DENIED.

**I.    Background**

    **A.**    *The Trial and Conviction*

Reiter and four of his co-defendants were tried on a thirteen-count twelfth superseding indictment, (12S) 87 Cr. 132 (the "12S Indictment"), returned on February 23, 1988, that

charged seven defendants with, among other things, participation in and conspiracy to participate in a racketeering enterprise.  The 12S Indictment charged that from approximately January 1, 1980, to October 31, 1987, "the Jackson Organization" constituted an enterprise "associated in fact" within the meaning of 18 U.S.C. § 1961(4).  The Jackson Organization

> had as its purpose the obtaining of income for the members of the enterprise through a large-scale scheme to distribute heroin in Manhattan, the Bronx, Bridgeport, Connecticut, Washington, D.C., and Boston, Massachusetts. From approximately late 1983 through 1987, the Jackson organization was headed by James Jackson, who eventually became the government's chief witness at trial.  The indictment also charged that to protect and preserve the enterprise, its members resorted to fraud and violence, including murder.

*United States v. Reiter*, 897 F.2d 639, 640–41 (2d Cir. 1990).

On August 25, 1988, Reiter and four co-defendants were convicted on all counts and every predicate act of racketeering after a four-month jury trial.  *Reiter v. United States*, 371 F. Supp. 2d 417, 420 (S.D.N.Y. 2005).  Reiter was convicted of racketeering (with predicate acts including three murders, three murder conspiracies, conspiracy to distribute narcotics, heroin distribution, and using a telephone to facilitate a narcotics violation), racketeering conspiracy, operating a continuing criminal enterprise, distribution of heroin, using a telephone to facilitate heroin distribution, and conspiring to defraud the Internal Revenue Service.  *See id.* at 419–20; 12S Indictment.

### B. *The Sentencing Hearing and Sentence*

On October 24, 1988, Judge Richard Owen sentenced Reiter to two life terms of imprisonment, plus sixty years.  *See Reiter*, 371 F. Supp. 2d at 419–20.  During the sentencing proceeding, Reiter's attorney sought a *Fatico* hearing to contest certain facts contained in the presentence report (the "PSR").  Judge Owen denied the request in the following exchanges:

2

The Court: . . . I don't see anything that I am going to be giving consideration to that requires a Fatico hearing. I heard the trial and frankly beyond that the only things that are of consequence to me are the prior record here and, frankly, that's about it. I don't know of anything in this report from your letter that you want to contest that, frankly, place any part in the court's consideration.

Mr. Slotnick: Then I would ask your Honor to strike it from the probation report as is our right in the circuit. We do contest the organized crime allegation. We do contest the allegation that it was large scale narcotic trafficking and we would ask if we do not have a Fatico hearing that those matters be stricken from the probation report.

The Court: What's the government's position on that?

Ms. Galeno: If I may have a moment, your Honor.

(Pause)

The Court: Let me defer this excision question to hereafter. It doesn't have to be resolved at this second. I made it clear on the record I am not going to consider those matters. Whether they come out as another matter entirely, that's something we can deal with later.

Ms. Galeno: A quick reading of this section, the court can make a finding of those areas contested and append it to the sentence. I do not believe there is anything under Rule 32 that takes for excision.

The Court: I am not relying on those.

Mr. Slotnick: Under U.S. against Fatico with regard to matters in contest, we have a right to a hearing before your Honor --

The Court: Only if there is a contested issue that I want to consider and then you have the right to a hearing, but I am not.

Mr. Slotnick: Then I will ask your Honor to excise them from the probation report.

The Court: I will let the government tell me that.

Mr. Slotnick: I respectfully except to that ruling.

The Court: Let's proceed.

. . .

> Mr. Slotnick: For one last time, I will ask the court to adjourn the sentencing so that Mr. Reiter can receive due process at this critical stage of the proceedings.
>
> The Court: For the last time, the answer is no and I deny it.
>
> Mr. Slotnick: With regard to the probation report and with regard to the government's memorandum, I think my letter clearly indicates that we do reject and deny the vast majority of the matters presented in the probation report and presented in the government's memorandum. Specifically, Mr. Reiter denies his guilt as convicted. Specifically, Mr. Reiter denies any association or relationship with so-called organized crime. He asks your Honor to excise and reject these matters as not being proper for purposes of this court's sentencing and not being proper for a probation report nor for a parole board in the future.
>
> The Court: Mr. Slotnick, I am relying on virtually nothing in the presentence report except the prior conviction.
>
> Mr. Slotnick: Then I would ask your Honor, if you are relying on nothing in the presentence report – that's also the probation report also, I presume? When you say presentence report? The government's sentencing memorandum and the probation report, is that correct?
>
> The Court: And the trial record, of course, needless to say, which I heard.

(Sentencing Tr. at 40-42, 46-47.)[1] Prior to imposing sentence, Judge Owen discussed, among other things, the Jackson Organization, its narcotics trafficking, and the murders that Reiter ordered as a member of that organization:

> The Court: We then come to the year on this trial 1982, contacts through Sperling with the Ashes, reconstruction of the Nicky Barnes organization, the Ashes to Jackson, who in major measure took over Nicky Barnes' operation and had one of the largest heroin operations in the city, if not the largest, with branch stores in Bridgeport, Virginia, supplied through a major part of that time with heroin that you got for him.
>
> As I noted in connection with an earlier sentence on a bad week he grossed 25,000 and in a good week he grossed 75.
>
> Along the way to protect that operation you ordered the killings of Beverly Ashe and Steven. In order to carry out your orders, poor old Bones was

---

[1] "Sentencing Tr." refers to the October 24, 1988 Sentencing Hearing Transcript. (Doc. 439-1.)

4

> thrown in the ash heap to try to find out where Steven was. And when Fleming, obviously, became a risk to you, you ordered Fleming killed. Somehow he managed to escape.
>
> Over that period of time you were supervising a substantial operation with Vito and Bill and various people you supplied to, the major supracorporation on top of other corporations and when things hit the fan with Jackson, you took off.
>
> Your son Greg kept on going for you, taking care of Fleming for awhile.
>
> . . .
>
> In this case, between the heroin distributions and the millions of dollars of racketeering conspiracy with Jackson, with the murders that you ordered done to protect yourself and enormous supervision of people constituting a Continuing Criminal Enterprise under 21 U.S.C. 848, you have been a pipeline to New York for heroin for at least 83 to 86 and doubtless before. The fact that you didn't pay your taxes is but a pimple on the nose of all of the rest of this.

(*Id.* at 50-52.)

Judge Owen then sentenced Reiter to two life terms of imprisonment plus sixty years. That sentence was calculated as follows: 20 years for the racketeering and racketeering conspiracy convictions (Counts 1 and 2), to run concurrently with one another; concurrent life sentences for operating a continuing criminal enterprise (Count 3) and distributing and possessing with intent to distribute more than 100 grams or more of a mixture and substance containing a detectable amount of heroin (Count 5); and 30 years for distributing and possessing with intent to distribute heroin (Count 6), 5 years for using a telephone to commit a felony (Count 7), and 5 years for conspiring to evade income tax (Count 13), to run consecutively. With respect to Count 5, distributing and possessing with intent to distribute more than 100 grams of heroin, Judge Owen noted that he was sentencing Reiter for a "substantial amount of heroin." (*Id.* at 53 ("On Count 5, I am sentencing you, and this is distribution of a substantial amount of heroin, there to life imprisonment without parole . . . .").)

### C. *Appeal and Habeas Petitions*

The Second Circuit affirmed Reiter's convictions and sentence on appeal. *United States v. Reiter*, 897 F.2d 639 (2d Cir. 1990). The Supreme Court denied Reiter's petition for a writ of certiorari. *Reiter v. United States*, 498 U.S. 817 (1990).

On April 2, 1997, Reiter filed a pro se petition pursuant to 28 U.S.C. § 2255 arguing that his due process rights were violated by the Government's failure to provide him with exculpatory evidence and that his trial and appellate attorneys were ineffective. *Reiter*, 371 F. Supp. 2d at 420–21. Judge Owen dismissed the petition as untimely, but the Second Circuit remanded under *Mickens v. United States*, 148 F.3d 145 (2d Cir. 1988), which held that Section 2255 petitions filed before the first anniversary of the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 were not time-barred by its statute of limitations. *See Reiter*, 371 F. Supp. 2d at 421, 423.

On remand, Reiter obtained counsel who filed supplemental submissions on Reiter's behalf, including a supplement to Reiter's original claims on December 29, 1998, an amended habeas petition containing nineteen issues and various sub-issues on May 16, 2002, and a second amended petition on December 18, 2002. *Id*. at 421 & n.4. Judge Owen denied Reiter's Section 2255 petition in its entirety. *Id.* at 436. Judge Owen rejected, among other things, Reiter's argument that the failure of the jury to make findings concerning drug amounts violated the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), on the ground that *Apprendi* does not apply retroactively. *See Reiter*, 371 F. Supp. 2d at 432 (citing *Coleman v. United States*, 329 F.3d 77 (2d Cir. 2003)).[2] The Second Circuit denied Reiter's request for a

---

[2] Judge Owen also rejected Reiter's claim that the evidence was insufficient for the Court to sentence him on Count 5 based on 100 grams of heroin, holding that the claim was both time-barred and not cognizable under Section 2255 because it did not allege "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Reiter*, 371

6

certificate of appealability. *Reiter v. United States*, No. 97 cv 2941 (RO) (S.D.N.Y. Oct. 17, 2007).

## II. Discussion

### A. *Applicable Law*

Because Reiter committed the offenses prior to November 1, 1987, the prior version of Federal Rule of Criminal Procedure 35 applies. *See United States v. Lika*, 344 F.3d 150, 152 n.2 (2d Cir. 2003); *Shakur v. United States*, 44 F. Supp. 3d 466, 473 (S.D.N.Y. 2014). Former Rule 35 provided as follows:

> (a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.
>
> (b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Fed. R. Crim. P. 35(a)–(b) (1985).[3] "An old Rule 35 motion is 'limited to consideration of the validity of a sentence and cannot be used to challenge the merits of the underlying conviction.'" *United States v. Torres*, No. 87 Cr. 593(JSR)(GWG), 2013 WL 6085549, at *2 (S.D.N.Y. Nov. 20, 2013) (quoting *Aiello v. United States,* No. 84 Cr. 881(KTD), 2010 WL 3912503, at *2

---

F. Supp. 2d at 432 (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

[3] Rule 35(a) now states that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." It was amended following the passage of the Sentencing Reform Act of 1987, "thus explicitly foreclos[ing] the Rule 35(a) route for obtaining judicial review of an allegedly illegal sentence at any time." *United States v. Lussier*, 104 F.3d 32, 37 (2d Cir. 1997) (internal quotation marks omitted).

(S.D.N.Y. Sept. 8, 2010)); *see also United States v. Schiff*, 876 F.2d 272, 274 (2d Cir. 1989) ("It is well established that a motion under Rule 35 can only be used to correct an illegal sentence, and not to correct trial errors or errors in other pre-sentencing proceedings."). Its "narrow function" is to "permit correction at anytime of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence." *United States v. Huss*, 520 F.2d 598, 602–03 (2d Cir. 1975) (quoting *Hill v. United States*, 368 U.S. 424, 430 (1962)).

"Sentences subject to correction as 'illegal' under former Rule 35 are 'those that the judgment of conviction did not authorize.'" *Lika*, 344 F.3d at 153 (quoting *United States v. Morgan*, 346 U.S. 502, 506 (1954)). These include sentences that are "in excess of a statutory provision or otherwise contrary to the applicable statute," *id.* (quoting *Huss*, 520 F.2d at 602), or, by their terms, are "legally or constitutionally invalid in any other respect," *id.* (quoting *Hill*, 368 U.S. at 430). It does not include sentences imposed "in an *illegal manner*," which are subject to the 120-day rule in subsection (b). *See* Fed. R. Crim. P. 35(a)–(b) (1985) (emphasis added). "For later ('at any time') motions, . . . the court's authority is limited to correcting sentences that are illegal even if there was no irregularity in the sentencing proceeding; the court may not 're-examine errors occurring at the trial or other proceedings prior to the imposition of sentence.'" *United States v. Boyd*, 591 F.3d 953, 956 (7th Cir. 2010) (quoting *Hill*, 368 U.S. at 430); *see also United States v. Torres*, 677 F. Supp. 2d 668, 671 n.3 (S.D.N.Y. 2009) ("Resort to evidence outside the trial record is particularly inappropriate in the context of old Rule 35(a), which has been treated as limiting the inquiry to the record." (internal quotation marks omitted)). In other words, an illegal sentence is one "that is ambiguous, inconsistent with the defendant's conviction, or otherwise defective." *Boyd*, 591 F.3d at 956 (internal quotation marks omitted).

8

Further, "even where the sentence was illegal, former Rule 35 only g[ives] the court *discretion* to modify the sentence; it d[oes] not require that the court do so." *Shakur*, 44 F. Supp. 3d at 474 (quoting *United States v. Finkielstain*, 293 F. App'x 62, 63 (2d Cir. 2008) (summary order)); *see also* Fed. R. Crim. P. 35(a) (1985) ("The court *may* correct an illegal sentence at any time . . . ." (emphasis added)); *United States v. Rivera*, 376 F.3d 86, 91–92 (2d Cir. 2004) ("We note that the wide latitude provided in the older versions of Rule 35 for a sentence correction 'at anytime' was not required by the Due Process Clause. A defendant has no due process right to continue to challenge his conviction in perpetutity."). Prudential considerations, such as the legal system's interest in finality and the passage of time, may inform a district court in its exercise of discretion. *See Finkielstain*, 293 F. App'x at 63 (citing *United States v. Pivorotto*, 986 F.2d 669, 674–75 (3d Cir. 1993)) (affirming district court's exercise of discretion in denying former Rule 35(a) motion because of the passage of time during which petitioner had "ample opportunity to challenge the legality of his sentence.").

### B. *Application*

Reiter argues that his life sentence on Count 5 is illegal because Judge Owen failed to make an explicit factual finding that his conduct involved more than 100 grams of heroin, and he is therefore eligible only for sentencing under 21 U.S.C. § 841(b)(1)(C), which carries a maximum sentence of 30 years. Reiter's argument is factually and legally incorrect.

Reiter was sentenced prior to *Apprendi*, which held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[4] 530 U.S. at 490. Before *Apprendi* was decided, juries

---

[4] Reiter does not argue that his sentence is illegal because it violates *Apprendi*. In his § 2255 motion, Reiter raised the *Apprendi* issue, and Judge Owen rejected it on the basis that *Apprendi* does not apply retroactively on collateral attack. *Reiter*, 371 F. Supp. 2d at 432; *see also Coleman*, 329 F.3d at 84 (holding that *Apprendi* was a new procedural rule that does not apply retroactively). Reiter's complaint—that the drug quantity was found neither by

9

were "not asked to and did not make any findings as to the quantities of drugs involved" in drug offenses. *Guzman v. United States*, 277 F. Supp. 2d 255, 262 (S.D.N.Y. 2003). Thus, in pre-*Apprendi* cases involving drug quantities, "even when quantity was charged in an indictment, it remained a sentencing factor to be determined by the Court after a defendant's conviction." *United States v. McLean*, 287 F.3d 127, 131 (2d Cir. 2002). For purposes of mandatory penalties in narcotics cases, district courts were required to make particularized findings as to the quantity of drugs. *See United States v. Hernandez-Santiago*, 92 F.3d 97, 100 (2d Cir. 1996) (vacating sentence and remanding for resentencing where district court "did not make a particularized finding as to the quantity of drugs properly attributable to" defendant); *United States v. Maturo,* 982 F.2d 57, 62 (2d Cir. 1992) (vacating sentence where district court "implicitly accepted the factual findings made in the PSR" but did not "make this explicit" despite being "required to make specific affirmative factual findings" as to drug amount). Reiter argues that Judge Owen's failure to make such findings make him ineligible for a sentence that exceeds 30 years.

However, as the Government correctly points out, district courts were not required to make explicit factual findings as to conduct that preceded the effective date of the United States Sentencing Guidelines, *see United States v. Story*, 891 F.2d 988, 991 (2d Cir. 1989) (the Sentencing Guidelines "'shall apply only to offenses committed after' the November 1, 1987, effective date"), like the conduct considered by Judge Owen at Reiter's 1988 sentencing

---

the jury nor by the judge—is different than an *Apprendi* claim.

It is not certain, however, that an *Apprendi* claim is cognizable under Rule 35(a). *See United States v. Lucas*, 129 F. App'x 650, 651 (2d Cir. 2005) ("Assuming without deciding that an *Apprendi* claim may be raised in a Rule 35 motion challenging a sentence that became final before *Apprendi* was decided, it would seem that the [resentencing] was within the court's remedial powers under Rule 35."); *United States v. Ruotolo*, 57 F. App'x 882, 884 (2d Cir. 2003) (declining to consider whether *Apprendi* applies to a former Rule 35(a) motion); *Boyd*, 591 F.3d at 957 (explaining that, where Rule 35(a) motion was based on *Apprendi*, the alleged error "occurred in the proceedings prior to the imposition of sentence and so was beyond the reach of a Rule 35(a) motion made after 120 days"). I make no findings here as to whether such a claim is cognizable under Rule 35(a).

proceeding. Prior to the Sentencing Guidelines, a judge's material misapprehension of fact could be grounds for vacating a sentence as a violation of due process. *See United States v. Stein*, 544 F.2d 96, 101–03 & n.7 (2d Cir. 1976) (granting motion that could be construed as Rule 35 motion and vacating sentence based on "erroneous assumptions or information that was materially incorrect" especially in light of district judge's failure to provide defendant with adequate opportunity to be heard). It was only after the promulgation of the Sentencing Guidelines that judges began entering specific findings on the record regarding narcotics quantities. *See United States v. Thomas*, 274 F.3d 656, 661 (2d Cir. 2001) (stating that entry by a sentencing judge of findings on drug quantity became standard practice "following the promulgation of the U.S. Sentencing Guidelines"). Reiter offers no authority suggesting that such findings were required at the time of his sentencing in 1988, since the Sentencing Guidelines did not apply because Reiter's conduct pre-dated the effective date of the Sentencing Guidelines.[5]

Even if district courts were required to make explicit factual findings as to conduct that preceded the effective date of the Sentencing Guidelines, the record reflects that Judge Owen found that Reiter distributed far more than the 100 grams of heroin required to support Reiter's life sentence on Count 5. Although Judge Owen did not explicitly state the amount of drugs in terms of grams or kilograms for which Reiter was being held responsible, his statements were tantamount to expressly finding the amount of drugs. Specifically, Judge Owen found that Reiter's conduct with respect to Count 5 involved "distribution of a substantial amount of

---

[5] Reiter directed the Court's attention to a recent Seventh Circuit decision, *United States v. Patterson*, No. 16-2119, 2017 WL 4112407 (7th Cir. Sept. 18, 2017), arguing that it provides further support for the requested relief. (*See* Doc. 499.) Not only does *Patterson* lack binding effect on this Court, but it is also factually distinguishable from this case. For example, Reiter was convicted in 1988, prior to the passage of the Sentencing Guidelines; Patterson, by contrast, was convicted in 2015.

11

heroin." (Sentencing Tr. at 53.) He also stated that Reiter had "been a pipeline to New York for heroin for at least [19]83 to [19]86," (*id*. at 52:3-5), and that he had sold "pure heroin over the years in massive quantities," (*id*. at 52:19-21). He made clear that the heroin conspiracy was "one of the largest heroin operations in the city, if not the largest." (*Id*. at 50:17-20.) Judge Owen also specifically found that "on a bad week [the Jackson Organization] grossed 25,000 and in a good week he grossed 75." (*Id*. at 50:22-23.) Using the figure for "a bad week" between 1983 and 1986 Reiter—as a member of the Jackson Organization—was responsible for the distribution of $3,900,000 worth of heroin. On this record, the amount of heroin supplied by Reiter undoubtedly involved substantially more than 100 grams of the drug.

In any event, Judge Owen's findings clearly suggest that based upon the testimony he heard during the four month trial he believed the conspiracy to involve far greater than 100 grams of heroin.[6] Judge Owen stated that he would not be relying on any of the contested information in the PSR—including drug amounts—as the basis for denying defense counsel's requests for an adjournment and a *Fatico* hearing. (*See* Sentencing Tr. at 40-42, 46-47.) Instead, Judge Owen stated during the sentencing proceedings that he was relying on the record of Reiter's trial that he presided over. (*See id.* at 40:23-41:5 ("I heard the trial and frankly beyond that the only things that are of consequence to me are the prior record here and, frankly, that's about it."); 47:15-24 ("I am relying on virtually nothing in the presentence report except the prior conviction. . . . And the trial record, of course, needless to say, which I heard.").) These statements make clear that Judge Owen was relying on the trial record as the basis for finding that Reiter distributed a "substantial amount of heroin" and thus finding him eligible for a life

---

[6] Judge Owen also appeared to be under the assumption that he had in fact found that the amount of heroin exceeded 100 grams. In rejecting Reiter's *Apprendi* argument in his § 2255 motion, Judge Owen stated that "Reiter's sentence on Count 5 of the Indictment *was based upon drug amounts determined by the Court*, rather than by the jury." *Reiter*, 371 F. Supp. 2d at 432 (emphasis added).

12

sentence under 21 U.S.C. § 841(b)(1)(B). Thus, even if Judge Owen was obligated to explicitly state that the heroin quantity exceeded 100 grams, and even if his statements did not do so with sufficient clarity, any such failure was harmless under the circumstances.

In addition, Reiter does not argue and Judge Owen's statements do not evince a material erroneous assumption of fact, and therefore Judge Owen's statements cannot serve as a basis for vacating Reiter's sentence as a violation of due process. *See Stein*, 544 F.2d at 101–03 (vacating sentence based on "erroneous assumptions or information that was materially incorrect" especially in light of district judge's failure to provide defendant with adequate opportunity to be heard); *United States v. McDavid*, 41 F.3d 841, 843–44 (2d Cir. 1994) (vacating sentence on due process grounds based on the sentencing judge's material misapprehension of fact—that the defendant was on probation at the time he committed the crime). Further, to the extent Reiter contests the manner in which he was sentenced, such challenge is not cognizable under Former Rule 35(a). *See Finkielstain*, 293 F. App'x at 63 ("To the extent Finkielstain's Rule 35(a) motion asserted that his sentence had been imposed in an illegal manner, under the Rule as in effect at the time of his sentencing, such a motion was required to be filed within 120 days after the sentence was imposed."). Therefore, Reiter's sentence is not illegal and Former Rule 35(a) affords him no relief.

Finally, even if Reiter's sentence were illegal, I would decline the opportunity to modify it. *See Finkielstain*, 293 F. App'x at 63 ("Even where the sentence was illegal, former Rule 35 only gave the court discretion to modify the sentence; it did not require that the court do so."). Reiter was sentenced almost 29 years ago, his present argument is similar to those that have been raised and rejected, and he provides no explanation for why this motion was not brought earlier. Nor has he presented some compelling reason for reopening a judgment that was made final so

long ago. In fact, Reiter's conviction of three predicate acts of murder counsels against reopening the judgment and resentencing. Under the circumstances, modification of Reiter's sentence is not warranted. *See Shakur*, 44 F. Supp. 3d at 475 (deciding that it need not reach merits of a Rule 35(a) motion where the issue was previously raised and rejected, and 24 years had elapsed); *United States v. Persico*, 85 Cr. 139-KTD-10 (S.D.N.Y. June 24, 2016) (declining to resentence pursuant to Former Rule 35(a) where defendant waited more than 23 years to challenge its legality).

### III. Conclusion

For the foregoing reasons, Petitioner's motion, (Doc. 436), is DENIED.

SO ORDERED.

Dated: January 9, 2018
New York, New York

Vernon S. Broderick
United States District Judge