USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/15/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
UNITED STATES OF AMERICA,              :
:                           87-CR-132 (VSB)
v.                          :
:                           **OPINION & ORDER**
MARK REITER,                           :
:
Defendant.   :
:
-----------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

Before me is the second motion of Mark Reiter ("Defendant" or "Reiter") seeking "modification of his sentence under the [First Step Act], 18 U.S.C. § 3582 (c)(1)(B); The Cares Act, or in the spirit of" *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014), to a sentence of time served.  (Reiter Sec. Comp. Rel. Mot. 6.)[1]  Although I conclude that Reiter has exhausted his administrative remedies, I find that I would benefit from Reiter receiving the assistance of counsel to more specifically address the legal issues raised by his motion and to supplement the factual record of Reiter's incarceration history, including his conditions of confinement during the COVID-19 pandemic and his alleged rehabilitation.

I.   **Background and Procedural History**[2]

Trial against Reiter and four of his co-defendants began on May 2, 1988, before Judge

---

[1] "Reiter Sec. Comp. Rel. Mot." refers to the second motion filed by Mark Reiter seeking compassionate release dated August 19, 2020.  (Doc. 455.)

[2] Background relating to Defendant's trial, conviction, sentencing, appeal, and habeas petitions can be found in my Memorandum & Order denying his motion under former Federal Rule of Criminal Procedure 35(a) to correct his allegedly illegal sentence filed on January 9, 2018.  (Doc. 450.)  Therefore, I only include the facts and procedural history necessary for this Opinion & Order.  Consistent with my Individual Rules and the Electronic Case Filing Rules & Instructions, I have redacted references and discussions concerning Reiter's medical records, treatment, and diagnosis.

Richard Owen and a jury. *Reiter v. United States*, 371 F. Supp. 2d 417, 419 (S.D.N.Y. 2005). During trial the Government called 60 witnesses and offered over 450 exhibits. *Id.* at 437. On August 25, 1988, the jury convicted Reiter and his co-defendants on all counts. *Id.* at 420.

On October 24, 1988, Judge Owen sentenced Reiter to two life terms of imprisonment, plus sixty years. *See id.* at 420; (Sentencing Tr. 52–53.)[3] Reiter's sentence was calculated as follows: 20 years for the racketeering and racketeering conspiracy convictions (Counts 1 and 2), to run concurrently with one another; concurrent life sentences for operating a continuing criminal enterprise (Count 3), and distributing and possessing with intent to distribute more than 100 grams or more of a mixture and substance containing a detectable amount of heroin (Count 5); 30 years for distributing and possessing with intent to distribute heroin (Count 6), 5 years for using a telephone to commit a felony (Count 7), and 5 years for conspiring to evade income tax (Count 13), running consecutively with each other and Counts 1 and 2. With respect to Count 3—operating a continuing criminal enterprise—Judge Owen observed that to protect the heroin operation, Reiter ordered three murders. (Sentencing Tr. 50–51.) Judge Owen stated:

> In this case, between the heroin distributions and the millions of dollars in racketeering conspiracy with Jackson, with the murders that you ordered done to protect yourself and the enormous supervision of people constituting a Continuing Criminal Enterprise under 21 U.S.C. § 848, you have been a pipeline to New York for heroin for at least 83 to 86 and doubtless before.

(*Id.* at 51–52; *see also id.* at 52) ("senses of humor do not detract from ordering murders and selling pure heroin over the years in massive quantities.") With respect to Count 5—distributing and possessing with intent to distribute more than 100 grams of heroin—Judge Owen noted that he was sentencing Reiter for a "substantial amount of heroin." (*Id.* at 52–53.) ("On Count 5, I am sentencing you, and this is distribution of a substantial amount of heroin, there to life

---

[3] "Sentencing Tr." refers to the October 24, 1988 Sentencing Hearing Transcript. (Doc. 457-1.)

2

imprisonment without parole . . . .").)

Reiter, who is 73 years old, is currently incarcerated at the Allenwood Low Security Federal Correctional Institution ("FCI Allenwood Low") in Allenwood, Pennsylvania.[4]  He has served approximately 32 years and 6 months of his life sentence.[5]  Reiter previously filed a letter motion seeking compassionate release, (Doc. 453), which I denied without prejudice on the grounds that Reiter had not provided proof that he had exhausted his administrative remedies or that he was at increased risk of serious illness or death should he contract COVID-19, (Doc. 454).

Reiter's second compassionate release motion was filed on August 19, 2020. (Doc. 455.) The Government filed its opposition to Reiter's motion on September 25, 2020, (Doc. 457), and Reiter filed his reply on October 16, 2020, (Doc. 458).  In a letter dated October 13, 2020, Reiter made a correction to his reply. (Doc. 459.)

Reiter filed a motion to supplement the record on February 10, 2021,[6] ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and to draw my attention to certain caselaw he believed to be relevant.  (Doc. 463.)  I filed an Order on February 11, 2021, granting Reiter's motion to supplement the record, and directed the Government to provide me "with an update on Reiter's health as soon as possible." (Doc. 464.)  The next day the Government filed a letter in response to my Order, (Doc. 465), and attached certain of Reiter's medical records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Those medical records indicate the following:

---

[4] The Federal Correctional Complex, Allenwood ("FCC Allenwood") consists of FCI Allenwood Low, FCI Allenwood Medium and United States Penitentiary Allenwood.  *Our Locations*, Federal Bureau of Prisons, https://www.bop.gov/locations/list.jsp (last visited Feb. 2, 2021).

[5] Reiter was arrested on November 18, 1987, *Reiter v. U.S.*, 371 F.Supp.2d 417, 454 (2005), and sentenced on October 24, 1988.  I have calculated the number of years Reiter has been incarcerated as starting on the date he was sentenced.

[6] The motion was dated January 28, 2021.  (Doc. 463 at 1.)

(5) that Reiter received the first dose of the Moderna vaccine for COVID-19 on January 6, 2021, and the second dose on February 4, 2021. By endorsement filed on February 13, 2021, I granted the Government's request to file Reiter's medical records under seal.  (Doc. 466.)   On February 25, 2021, Reiter filed additional information, which included an article stating that blood clots and strokes are now potential side effects of COVID-19, and the number of federal inmates and BOP staff who have tested positive for COVID-19 as of February 19, 2021.  (Doc. 467.)  On March 19, 2021, Reiter sought leave to supplement his pleadings with an order from a similar case.  (Doc. 468.)

## II.     Discussion

By motion dated August 19, 2020, Reiter seeks modification of his sentence pursuant to "18 U.S.C. § 3582(c)(1)(B); The Cares Act, or in the spirit of" *Holloway*, 68 F. Supp. 3d 310, based on his conduct and rehabilitation over the last 31 years and his increased risk of serve illness should he contract COVID-19.[7]  (Reiter Sec. Comp. Rel. Mot. 6, 8.)  The Government's opposition and Reiter's reply, however, treat Reiter's motion as one filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate release statute.  (*See* Govt. Opp. 2; Reiter Reply 4.)[8]

---

[7] Section 3582(c)(1)(B) provides that a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  On January 9, 2018, I denied Reiter's counseled motion under former Federal Rule of Criminal Procedure 35(a) to correct his allegedly illegal sentence on the basis that neither the jury nor the judge made particularized findings that his heroin distribution involved more than 100 grams, and therefore his life sentence was illegal.  (Doc. 450.)

[8] "Govt. Opp." refers to the letter motion filed by the Government, on September 25, 2020, in response to Reiter's second compassionate release motion.  (Doc. 457.)  "Reiter Reply" refers to Reiter's reply, filed on October 16, 2020, to the Government's letter opposition.  (Doc. 458.)

Therefore, I will treat Reiter's motion as seeking relief under 18 U.S.C. § 3582 (c)(1)(A)(i). The Government contends that Reiter has not exhausted his administrative remedies, and that the Section 3553(a) factors weigh strongly against any reduction in his sentence.

As detailed below, I find that Reiter has exhausted his administrative remedies. However, I request more information concerning Reiter's post-conviction rehabilitation and information related to his COVID-19 conditions of confinement. Therefore, Reiter is directed to file the attached financial affidavit as soon as possible, so that I may appoint counsel if he qualifies for counsel to assist Reiter in, among other things, amplifying legal arguments related to his compassionate release motion and compiling this supplemental information.

### A. Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i), the compassionate release statute, provides one such exception. The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[9] 18 U.S.C. § 3582(c)(1)(A). The moving party bears the burden of proving that extraordinary and compelling

---

[9] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act. *United States v. Russo*, 454 F. Supp. 3d 270, 273 (S.D.N.Y. 2020). However, the Second Circuit recently interpreted § 1B1.13 in light of the First Step Act, and concluded that when a "compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id*. "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted).

reasons exist. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *see also United States v. Clarke*, No. 09 Cr. 705(LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.") (quoting *Butler*, 970 F.2d at 1026); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf by filing a motion. *See* U.S.S.G. § 1B1.13 (stating, among other things that "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); *see also Gotti*, 433 F. Supp. 3d at 614 ("Until last December, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the Bureau of Prisons asking that the court consider such modification."). However, in December 2018, Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See id.* The statute is clear that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, it promotes efficiency, since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

"The provenance of an administrative exhaustion requirement determines its scope." *United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). There are two types of exhaustion requirements: jurisdictional requirements and non-jurisdictional requirements. Jurisdictional exhaustion requirements "govern a court's adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). Non-jurisdictional requirements, also referred to as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). The Second Circuit has not yet squarely answered the question of whether the exhaustion requirement of § 3582(c) is jurisdictional.[10]  *See Monzon*, 2020 WL 550220, at *2.

    **B.**    *Application*

---

[10] Other courts of appeal are split on the question of whether section 3582(c) as a whole is jurisdictional or non-jurisdictional. *Compare United States v. Castenada-Ulloa*, 818 F. App'x 813, 815–16 (10th Cir. 2020) (considering section 3582(c) a jurisdictional rule), *United States v. Spears*, 824 F.3d 908, 916 (9th Cir. 2016); *United States v. Williams*, 607 F.3d 1123, 1125–26 (6th Cir. 2010), *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010), *United States v. Harris*, 574 F.3d 971, 972–73 (8th Cir. 2009), *and United States v. Freeman*, 659 F. App'x 94, 98 (3d Cir. 2016), *with United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017) (considering section 3582(c) a claim-processing rule), *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015), *and United States v. Harris*, 989 F.3d 908, 910–11 (11th Cir. 2021) (finding section 3582(c) exhaustion requirement non-jurisdictional). And while the Second Circuit has not weighed in on whether the exhaustion requirement of section 3582(c)(1)(A) is jurisdictional, it has, "in a related context . . . firmly disagreed with the characterization by certain other circuits that § 3582(c)(2) is jurisdictional." *United States v. Haney*, 454 F. Supp. 3d 316, 319 (S.D.N.Y. 2020) (citing *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)).

### 1. Exhaustion

As evidence of exhaustion, Reiter has submitted an April 6, 2020 letter from the Warden of FCI Allenwood Low denying his request for compassionate release. (BOP Ltr.)[11] The Government contends that Reiter has failed to meet the exhaustion requirement, because Reiter's "request was not made on the same grounds upon which his current motion is predicated." (Govt. Opp. 4.) The Government avers that in Reiter's request to the Warden, he "generally asserted that the First Step Act had expanded the bases for modification of a sentence and stated that his particular claim was based on his age and because of extraordinary and compelling circumstances," which included that his sentence was imposed illegally and that law concerning continuing criminal enterprises had changed since his sentencing, but "[n]owhere in the defendant's request to the Warden did the defendant mention his medical conditions (other than the general reference to 'serious deterioration of his physical and mental health') or COVID-19." (*Id.*) Based on this, the Government asserts that when rejecting Reiter's request for compassionate release, "the Warden reasonably understood the defendant's request primarily to be a 'claim that the law regarding [the defendant's] conviction has changed since the time of [the defendant's] sentencing,'" (*id.*) (quoting BOP Ltr.), and Reiter therefore has failed to exhaust his administrative remedies "with respect to the claim he now asserts," (Govt. Opp. 4.)

Reiter responds that under the First Step Act, district courts have wide discretion when considering what constitutes "extraordinary and compelling reasons," and that "common sense also dictates that medical situations evolve, and that a defendant's circumstances may change after filing a request with the Bureau of Prisons." (Reiter Reply 5–9.) He also asserts that many courts have granted compassionate release based on the risk posed by COVID-19 where such a

---

[11] "BOP Ltr." refers to the letter dated April 6, 2020 from the Warden of FCI Allenwood Low. (Doc. 455 at 10.)

risk was not cited in a defendant's original request to the BOP, and cites two cases. (*Id.* at 10.)

The Government ignores the timing of Reiter's motion and BOP's own assertions with regard to the actions it has taken to mitigate the spread of COVID-19 within the federal prison system. Reiter's compassionate release request to BOP was made on March 21, 2020. (BOP Comp. Rel. Request.)[12] Reiter requested compassionate release based on his age and other "compelling and extraordinary reasons." (*Id.* at 11–12.) In particular, Reiter stated that he was 72 years old, had served over 30 years in prison, and that due to his advanced age he was "experiencing serious deterioration in his physical and mental health that substantially diminishes his ability to provide self care." (*Id.* at 12.) Reiter argued that "extraordinary and compelling" circumstances were present because his life sentence on the heroin charge was illegal because the jury never determined the drug amount, and that the law had changed on continuing criminal enterprises. (*Id.* at 12–15.) As part of his request, Reiter described his support from family and law enforcement professionals, (*id.* at 3–5), his post-offense rehabilitation, (*id.* at 5–6), and his acceptance of responsibility and remorse (*id.* at 7–8.) On April 6, 2020, the Warden denied his request, stating that Reiter's "request d[id] not meet the requirements as set forth in policy" for compassionate release based on extraordinary or compelling circumstances, and that the BOP "does not have the authority through its compassionate release/reduction in sentence procedures, to reduce an inmate's sentence based on the amendment of the sentencing guidelines." (BOP Ltr.) The Warden's letter did not directly mention Reiter's argument about his age and health.

Between March 2020 and May 2020, more than 10,000 federal prisoners applied to BOP

---

[12] "BOP Comp. Rel. Request" refers to the application for compassionate release submitted by Reiter to the Warden on March 21, 2020. (Doc. 457-2.)

9

for compassionate release, and federal district courts have been flooded with compassionate release requests related to the COVID-19 pandemic.  Keri Blakinger & Joseph Neff, *Thousands of Sick Federal Prisoners Sought Compassionate Release.  98 Percent Were Denied*, The Marshall Project, (Oct. 7, 2020), https://www.themarshallproject.org/2020/10/07/thousands-of-sick-federal-prisoners-sought-compassionate-release-98-percent-were-denied; *see Updated Compilation of Compassionate Release Grants*, The Federal Docket, https://thefederaldocket.com/updated-compilation-of-compassionate-release-grants (last visited March 30, 2021); *United States v. Kaba*, No. 19 Cr. 242 (PAC), 2020 WL 2520807, at *1 (S.D.N.Y. May 18, 2020) (describing "flood" of compassionate release requests).  In the motion before me, Reiter cites to his post-conviction conduct and rehabilitation over the past 31 years—at the time he filed his motion—as "extraordinary and compelling reasons" for his release.  (Reiter Sec. Comp. Rel. Mot. 6.)  He also states that based on the Centers for Disease Control & Prevention ("CDC") guidelines, he is at risk for severe illness from COVID-19 because he is 72 years old, at the time he filed his motion, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ (*Id.* 8.)  Reiter asserts that COVID-19 has now "[i]nflitrated FCC Allenwood." (Reiter Reply 11.) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ e ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Reiter has since received both doses of the Moderna vaccine.  (Govt. Ex. A. at 101.)

As an initial matter, Reiter's compassionate release request was submitted to BOP early in the COVID-19 pandemic, making it unlikely that Reiter would base his March 2020 compassionate release request to BOP on the effects of COVID-19.[13]  Courts have refused to

---

[13] The World Health Organization declared the coronavirus a pandemic on March 11, 2020.  *Listings of WHO's response to COVID-19*, https://www.who.int/news/item/29-06-2020-covidtimeline (last visited Apr. 8, 2021).

consider the impact of COVID-19 on a defendant when the issue was not first raised to the BOP. *See United States v. Gotti,* No. 02 CR 743-07 (CM), 2020 WL 7706828, at *2 (S.D.N.Y. Dec. 29, 2020) (collecting cases); *United States v. Shakur*, No. 82 CR 312 (CSH), 2020 WL 2749686, at *6 (S.D.N.Y. May 27, 2020) (refusing to reach the merits of Defendant's motion until he "submitted a renewed request for that relief to the BOP, based in whole or in part upon the COVID-19 pandemic"). Here, although Reiter cited to his age and deterioration in his physical and mental health as grounds for compassionate release in his request to BOP, Reiter did not mention COVID-19. However, given the timing of Reiter's request, I find that his failure to specifically mention COVID-19 is not fatal to his motion. In *United States v. Resnick*, then-Chief Judge Colleen McMahon found that the defendant had exhausted his administrative remedies where the defendant relied on his susceptibility to COVID-19 in his motion to the court, but did not do so in his BOP request. 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020). Judge McMahon explained:

> I give the Bureau of Prisons credit for having some modicum of common sense; I do not believe for one minute that BOP was unaware of the rapid deterioration of conditions due to the coronavirus, or that BOP did not have those circumstances in mind as it evaluated Resnick's original request for compassionate release. If it did not, then BOP actually failed to follow the direct order of Attorney General Barr–who did not make his directive applicable only to compassionate release applications filed after it issued on March 26.[14] Since as far as the court is aware the original application was denied today—April 2—the application was subject to the Attorney General's order. I will assume that the BOP did what it was ordered to do in Resnick's case.

*Id.* Indeed, the BOP began planning and implementing its COVID-19 response in January

---

[14] On March 26, 2020, the Attorney General ordered BOP to consider COVID-19 vulnerability when reviewing compassionate release petitions. *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Office of the Attorney General (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf

2020.[15] Similar to the defendant in *Resnick*, Reiter's compassionate release request was under review during the pandemic, and its denial was issued on April 6, 2020—after the BOP had already begun its COVID-19 response and after the Attorney General's directive was already in place. Therefore, it seems likely that BOP did in fact consider Reiter's vulnerability to COVID-19 in rejecting his request. *Shakur*, 2020 WL 2749686, cited by the Government, (*see* Govt. Opp. 4), presents a different set of facts than those presented here. In *Shakur*, the defendant's request to BOP was submitted in June 2019 and denied in December 2019. 2020 WL 2749686, at *2. Given that timeline, it is very unlikely that BOP would have considered the impact of COVID-19 when assessing the defendant's request. Additionally, in Reiter's case, five days after Reiter submitted his request to BOP, a directive was issued that instructed BOP to consider home confinement as an option to protect inmates against the spread of COVID-19. *See Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Office of the Attorney General (Mar. 26, 2021), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. In any event, I agree with Judge McMahon's sentiment that "if the Government is suggesting that [I] . . . cannot take into account things that have occurred since [March 21, 2020]—things that render [Reiter's] situation even more parlous than it was [before], because he has not 'exhausted' those grounds, I am . . . constrained to disagree." *Resnick*, 451 F. Supp. 3d at 269.

Although the Warden's denial focused exclusively on Reiter's sentencing arguments in denying his request, Reiter's request to BOP and the motion before me both cited to Reiter's age

---

[15] In January 2020, "the BOP began planning for its COVID-19 response." *See A BOP COVID-19 Overview*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/overview.jsp#bop_emergency_response (last visited Feb. 17, 2021). The plan has included various phases since January 2020. *See United States v. Gumora*, 454 F.Supp.3d 280, 294–95 (S.D.N.Y. 2020) (discussing the BOP's five-phased COVID-19 response plan). "In order to mitigate the spread of COVID-19," the BOP has been operating under modified conditions. *BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

as a justification release. (*See* BOP Comp. Rel. Request 12; Reiter Sec. Comp. Rel. Mot. 1, 8.) The issue is not what the Warden decided to mention in his one-page decision; rather it is whether the issues were raised and put before the BOP. In the motion before me, Reiter also asserts that his post-conviction conduct and rehabilitation are "extraordinary and compelling reasons" for his release. (Reiter Sec. Comp. Rel. Mot. 6.) Although Reiter's conduct and rehabilitation were not explicitly framed as reasons for his release in his request to BOP, they were mentioned extensively throughout his request. (BOP Comp. Rel. Request 3–8) ("The words of Mr. Reiter's family and friends demonstrate the impact that his conviction and imprisonment have had on him, the genuine remorse that he feels for his wrongful conduct and his true acceptance of responsibility for his criminal offenses.") I therefore find that those claims were likewise before the BOP.[16]

In conclusion, I find that given the timing of Reiter's request, the BOP likely did consider Reiter's vulnerability to COVID-19 in denying his request, and likewise did consider Reiter's arguments about his post-conviction conduct and rehabilitation. Reiter therefore has exhausted his administrative remedies.

### 2. Extraordinary and Compelling Reasons

Reiter requests that I "reduce his life sentence, to time served." (Reiter Sec. Comp. Rel. Mot. 3.) If his sentence is reduced, Reiter states that he will reside with his son Michael and work in Michael's office until he is able to afford his own home. (*Id.* at 7.) Reiter asserts several "extraordinary and compelling reasons" to reduce his sentence, including his post-offense conduct, rehabilitation, and increased vulnerability to COVID-19. (*Id.* at 6–7, 8.)

---

[16] As a matter of first impression, one court in this District, after conducting an in-depth analysis, found that "issue exhaustion" is not required in the context of compassionate release motions. *See United States v. Torres*, 464 F. Supp. 3d 651, 654–57 (S.D.N.Y. 2020). Based on my earlier analysis, I do not find resolution of this issue to be necessary to resolve the instant motion.

13

At the time Reiter filed his motion his underlying health conditions put him at increased risk of severe illness from COVID-19. ██████████████████████████

██ The Government "does not dispute that the defendant satisfies the 'extraordinary and compelling reasons' inquiry for a reduction in sentence under 18 U.S.C. § 3582(c)(l)(A)(i)." (Govt. Opp. 6.) The Government notes that the CDC has identified obesity, classified as having a BMI of 30 or higher, as a factor placing individuals at higher risk of severe outcomes from COVID-19, ██████████████████████████[17]

Reiter states that COVID-19 has now infiltrated FCC Allenwood, (Reiter Reply 11), and submits documents showing that BOP has suspended social visits, (Doc. 460), COVID-19 inmate testing information, (Doc. 461), and a document that I believe is supposed to show the

---

[17] I note that in *United States v. Sanchez*, I found that a twenty-four-year-old defendant's BMI of 33.4 was not an extraordinary and compelling reason to reduce his sentence because the defendant "d[id] not cite to any information analyzing the purported impact on individuals with BMIs between 30—the BMI level at which obesity begins—and 40—the level at which severe obesity begins" and the level at which, at the time of the opinion, the CDC stated "puts people at higher risk for complications from COVID-19," No. 18-CR-833 (VSB), 2020 WL 2787654, at *4–5 (S.D.N.Y. May 29, 2020) (quoting *Groups at Higher Risk for Severe Illness, Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk html#severe-obesity)), and because defendant "only cite[d] to his BMI, which itself is just an estimate and is a measure of body fat based on height and weight that applies to adult men and women," (citing *Assessing Your Weight and Health Risk*, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health/educational/lose_wt/risk.htm) (last visited May 27, 2020). Currently, however, the CDC states that having obesity, defined as a body mass index (BMI) between 30 kg/m2 and 40 kg/m2, or severe obesity, defined as a BMI of 40 kg/m2 or above, increases sharply "[t]he risk of severe COVID-19 illness." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html#obesity (last visited Apr. 9, 2021). Although I acknowledge that using BMI as a health indicator has limitations, *see Sanchez*, 2020 WL 2787654, at *5, in distributing vaccines, many states have prioritized individuals who qualify as obese, *see States Set Different COVID-19 Vaccination Priorities for People with High-Risk Conditions*, Kaiser Fam. Found., (Feb. 16, 2021), https://www.kff.org/coronavirus-covid-19/press-release/states-set-different-covid-19-vaccination-priorities-for-people-with-high-risk-conditions/ (finding twenty-nine states have prioritized obesity during vaccine rollout). Finally, Reiter's advanced age distinguishes his situation from the defendant in *Sanchez*.

14

COVID-19 case numbers at FCC Allenwood (Doc. 462).[18]  Reiter cites to a letter sent from Congressman Fred Keller to the BOP directing the BOP to halt inmate movement after an inmate who was transferred to FCC Allenwood tested positive for COVID-19.  (Reiter Reply 11–12.)  Reiter states that "[d]espite [BOP]'s efforts, the quarantine has not prevented staff from testing positive, which will inevitably reach other staff members and incarcerated individuals."  (*Id.* at 12.)

Currently, FCI Allenwood Low has 0 positive inmates, 0 positive staff, 282 recovered inmates, and 19 recovered staff.  *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 12, 2021).  Reiter ████████████████████████████████████████████████████████████████████████ received the first dose of the Moderna vaccine for COVID-19 on January 6, 2021, and the second dose on February 4, 2021.  (*Id.* at 73–74, 80, 101.)  There is no question that the virus has spread through FCI Allenwood Low.  However, Reiter, having received the vaccine, is unlikely to become seriously ill and die ██████████████████████████████  *See LR Baden, et al. Efficacy and Safety of the mRNA-1273 SARS-CoV-2 Vaccine.* The New England Journal of Medicine. DOI: 10.1056/NEJMoa2035389. (Phase 3 clinical trial demonstrated Moderna vaccine has "94.1 % efficacy at preventing Covid-19 illness, including severe disease.").  Reiter submits an article stating that studies indicate that COVID-19 may cause an individual's blood to thicken, and asserts that he is now potentially in a worse state than those who have not contracted the virus.  (Doc. 467.)  Given that Reiter has been vaccinated and has not indicated any subsequent health issues, I am not persuaded by this argument as it pertains to Reiter.  *Cf.* Pam Belluck, *They Had Mild Covid.  Then Their Serious Symptoms Kicked In*, The New York Times (March 23, 2021),

---

[18] Document 462 does not show these numbers, likely due to a formatting error when filing.

https://www.nytimes.com/2021/03/23/health/long-covid-symptoms.html (describing long-terms effects of COVID-19).

Because Reiter has been vaccinated, Reiter's health conditions and the spread of COVID-19 at FCI Allenwood Low no longer present an "extraordinary and compelling reason" for a reduction of his sentence under 18 U.S.C. § 3582(c)(l)(A)(i).  *See, e.g.*, *United States v. Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *3–4 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release request where inmate had been vaccinated) (collecting cases); *United States v. Johnson,* No. 94 Cr. 631 (PGG), 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021) (finding no "extraordinary and compelling reasons" where inmate suffering from obesity had received first dose of vaccine, and would receive second dose in the coming weeks).

As noted, although the vaccine diminishes COVID-19 itself being an extraordinary and compelling reason for a reduction in Reiter's sentence, I agree Judge Rakoff's recent recognition that "the pandemic, aside from posing a threat to [Reiter's] health, has made [Reiter's] incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, No. 00 CR. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020). "[F]ederal prisons, as prime candidates for the spread of the virus . . . have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." *Id.* (internal citation and quotation marks omitted).  The risk that COVID-19 posed and poses to Reiter, a 73-year-old with underlying health conditions, paired with the various lockdowns and restrictions in place, "means that the actual severity of [Reiter's] sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing." *Id.* (internal quotation marks omitted); *see also United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to an inmate

16

housed at FCI Allenwood Low, and observing that "a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison"). Reiter's conditions of confinement were even more severe ███████████████████████ Although this factor alone is insufficient, *see Rodriguez*, 2020 WL 5810161, at *3, it militates in favor of finding "extraordinary and compelling reasons."

The Second Circuit has acknowledged that while rehabilitation "alone" is insufficient as an "extraordinary and compelling reason," it can interact with other circumstances to create an extraordinary and compelling reason for a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020); *see also Rodriguez*, 2020 WL 5810161, at *4 (finding defendant had established extraordinary and compelling reasons for a sentence reduction based on his underlying health conditions which placed him at a high risk for severe illness from COVID-19, the impact of the pandemic on the harshness of defendant's sentence, and his "total rehabilitation"); *United States v. Torres*, 464 F. Supp. 3d 651, 665 (S.D.N.Y. 2020) (finding that "the totality of the [defendants'] circumstances—their thorough and long-term rehabilitation, exemplary community service, and the high risk presented by the COVID-19 pandemic—provide[d] 'extraordinary and compelling reasons' for a sentence reduction."); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020) (finding that defendant's rehabilitation, remorse, post-conviction conduct, the support of BOP staff, and the sentencing disparity that would result from further incarceration constituted extraordinary and compelling reasons justifying a reduction in sentence).

Reiter has presented some evidence of rehabilitation. Given that Reiter's health conditions and the spread of COVID-19 at FCI Allenwood Low no longer present an

17

"extraordinary and compelling reason" for a reduction of his sentence, I would like additional information and documentation regarding his post-offense conduct and rehabilitation. Such supplemental information could include documentary evidence of his completion of BOP courses, and letters in support of his release from BOP officials, similar to the letter he submitted from his previous unit manager, Dennis Lentini. This supplemental information will also assist me in making a determination under the Section 3553(a) sentencing factors.

Here, in light of Reiter's recent vaccination and his pro se status, I find that I would benefit from Reiter receiving the assistance of counsel to more specifically address the legal issues raised by Defendant's motion and to supplement the factual record of Reiter's incarceration history, including his alleged rehabilitation.

### III. Conclusion

For the reasons stated above, Reiter is directed to fill out and file the attached financial affidavit as soon as possible, so that I may appoint counsel to assist Reiter. The Clerk of Court is respectfully directed to send an unredacted copy of this Opinion & Order and the attached documents to Defendant.

SO ORDERED.

Dated: April 15, 2021
       New York, New York

                                                Vernon S. Broderick